UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,


vs.                                                    DECISION AND ORDER

                                                       19-CR-6164 CJS/MWP

COREY L. GREEN,

                              Defendant.

_____

This case was referred by text order of the undersigned, entered September 24, 2019, to Magistrate Judge Marian W. Payson, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), ECF No. 21. On December 6, 2019, Defendant filed an omnibus motion, ECF No. 28, seeking *inter alia* suppression of tangible evidence. In that regard, Defendant maintains that on February 16, 2019, members of the Rochester Police Department illegally seized a loaded Kel-Tech Model 11 handgun, a quantity of marijuana, and an envelope containing cocaine, as well as cell phones[1] from the truck he was driving. Regarding Defendant's motion to suppress, an evidentiary hearing was held before Magistrate Judge Payson on January 27, 2020, ECF No. 34, and continued on February 18, 2020, ECF No. 38. On July 17, 2020, Magistrate Judge Payson filed a Report and Recommendation ("R&R"), ECF No. 47, recommending that Defendant's application to suppress tangible evidence be denied. After obtaining an extension, ECF No. 48, Defendant, on August 31, 2020, timely filed objections

---

[1]In its response, ECF No. 30, to Defendant's omnibus motion, the government indicates law enforcement was unable to access any information on the cell phones, and accordingly, their presence in the vehicle Defendant was driving appears to have no relevance to the crimes for which he was indicted.

to the R&R, ECF No. 49. Essentially, Defendant argues that Magistrate Judge Payson erred factually in her application of the plain view doctrine to recommend against suppression of the firearm at issue, based upon her credibility determination as to Rochester Police Officer Brandon Contreras ("Contreras"); and that she erred legally in her application of the automobile exception to recommend against suppression of the marijuana and cocaine at issue.

First, with regard to Contreras' credibility as it relates to her application of the plain view doctrine and the seizure of the firearm, Magistrate Judge Payson found:

> I agree with Green that application of the plain view and automobile exceptions hinges upon the Court's determination whether to credit Contreras's testimony that he observed the handle of a firearm in plain view under the driver's seat when Green opened the door to retrieve his identification. Accordingly, the first issue I address is Green's contention that Contreras's testimony contains such substantial inconsistencies and improbabilities as to render it unreliable in its entirety. I disagree.
>
> Green has identified four subjects as to which he contends that Contreras provided dubious, if not demonstrably false, testimony. They are: (1) whether Contreras believed that it would be unsafe to activate his body camera prior to exiting his patrol vehicle, (2) whether attempts to contact the owner of the truck were made before the truck search commenced, (3) whether multiple officers or multiple patrol vehicles routinely assisted in the investigation of traffic infractions, and (4) whether any of the officers had activated their patrol vehicles' emergency lights. (Docket # 45 at 8–9).
>
> With respect to the latter two issues, nothing in the record suggests that Contreras's testimony on these subjects was either false or inconsistent with the evidence. Green has not identified any evidence that undermines Contreras's testimony that it was customary for multiple officers to assist an officer who decides to leave his vehicle to conduct an investigation. As to whether the emergency lights of the patrol vehicles were activated, Contreras did not testify definitively that they were not; rather, he testified that he "believed" that they were not. Review of the body camera footage suggests that the emergency lights of both Contreras's and Castrichini's vehicles had not been activated, although Bradstreet's appear to have been activated. A discrepancy as to such a minor, non material fact, particularly where it arises from a failure of recollection, does not call into question the credibility of the

remainder of Contreras's testimony.  *See, e.g., United States v. Cancel*, 167 F. Supp. 3d 584, 590 (S.D.N.Y. 2016) (finding that "minor gaps in the record" in the form of "inconsistencies between the officers' testimony and certain documentary evidence" did not "undermine [the court's] conclusion that the officers testified credibly" and that the "material facts" of that testimony demonstrated probable cause supporting defendant's arrest).

Like Green, I am unconvinced by Contreras's testimony that safety concerns caused him to delay activating his body camera before exiting his patrol vehicle.  According to Contreras, he felt safer activating the camera when he was on the street and being approached by the owner of the truck than he did when he was exiting his vehicle.  Although various reasons could explain why Contreras delayed activating his camera, including that he simply forgot, the one that he offered makes little sense.

Contreras's testimony regarding attempts to contact the vehicle's owner is contradicted by the body camera footage.  Contreras testified he was confident that someone had informed him that attempts had been made to contact the owner of the truck prior to his search of the vehicle and that such communication would have been captured by his body camera.  As demonstrated by the recordings, Contreras began searching the vehicle less than three minutes after he first spoke with Green.  The footage of those three minutes does not depict officers making any efforts to contact the vehicle's owner or communicating with Contreras about any such attempts.

Green urges the Court to reject the entirety of Contreras's testimony as unworthy of belief.  In my view, although his testimony concerning the reason he delayed activating his body camera is unpersuasive and his testimony concerning attempted contacts with the vehicle's owner is inaccurate, those issues do not lead me to find the remainder of his testimony unreliable or underserving of credence.  Having reviewed the body camera footage and observed and considered Contreras's testimony, including his demeanor and tone during the incident as depicted in the camera footage and during his testimony before the Court, I do not find that Contreras intentionally misled or deceived the Court about his observation of the firearm.  **To the contrary, I find that Contreras credibly testified that he observed a portion of the handgun when Green opened the door to the truck.**

R&R, pp.11–14, ECF No. 47. (emphasis added)

Next, as to her reliance on the automobile exception with respect to the discovery and seizure of the marijuana and cocaine, Magistrate Judge Payson determined:

Because I credit Contreras's testimony that he observed the handle of the gun from his position outside of the vehicle, I find that the gun was properly seized pursuant to the plain view exception to the warrant requirement and that the automobile exception permitted the warrantless search of the truck.  The plain view doctrine "authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity." *Illinois v. Andreas*, 463 U.S. 765, 771 (1983).  Application of the plain view exception requires that the officer have a legitimate right to be in the location from which the object was plainly viewed, that the item's incriminating character be immediately apparent, and, that the officer have lawful access to the object.  *Horton v. California*, 496 U.S. 128, 136 37 (1990).

The automobile exception "permits law enforcement to conduct a warrantless search of a readily mobile vehicle where there is probable cause to believe that the vehicle contains contraband."  *United States v. Navas*, 597 F.3d 492, 497 (2d Cir.) (citing *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996)), *cert. denied*, 562 U.S. 954 (2010).  If an officer has probable cause to believe that a vehicle contains contraband, the permissible scope of the search extends anywhere within the vehicle that the contraband may be located, including containers or packages.  *Id.*

In this case, Contreras observed the handle of a gun when Green opened the door to the vehicle.  Upon observing the gun in plain view, its incriminating nature was immediately apparent, justifying its seizure.  *See United States v. Sanchez Villar*, 99 F. App'x 256, 258 (2d Cir. 2004) ("[u]nder New York law, it is a crime to possess a firearm[; . . ] because it is beyond dispute that the officers were lawfully located in a place from which they plainly could see the gun, the officers were justified in seizing it because of its 'immediately apparent' incriminating character") (citing N.Y. Penal Law § 265.01(1)), judgment vacated and remanded pursuant to *United States v. Booker*, 544 U.S. 1029 (2005); *United States v. Scopo*, 19 F.3d 777, 782 (2d Cir.) ("the mere presence of a partially concealed firearm is highly and immediately incriminating[;] [t]hus, . . . the police were justified in both stopping and arresting [defendant], and in seizing his firearm"), *cert. denied*, 513 U.S. 877 (1994); *United States v. Levy*, 217 F. Supp. 3d 643, 668 (E.D.N.Y. 2016) ("defendant's gun was visible to anyone standing at the open door of the car, and the incriminating nature of the gun was immediately apparent to anyone observing it[;] . . . [t]he officers had a lawful right to seize it"); *United States v. Colter*, 2016 WL 3562053 at *2 ("[t]he gun, discovered inadvertently, the incriminating nature of which was immediately apparent, was lawfully seized in accordance with the plain view exception to the Fourth Amendment").  Further, upon discovery of the gun, the officers had probable cause to believe that Green unlawfully possessed a firearm in violation of New York Penal Law Section 265.01 and that evidence of that crime might be found within the vehicle, permitting its search.  *See United States v. Miller*, 265 F. App'x 5, 8 (2d Cir.) ("once [the officer] discovered

[a loaded magazine] within the glove compartment of [defendant's] car as a consequence of their authority to search incident to arrest, they had sufficient probable cause under the automobile exception to justify their search of [defendant's] trunk"), *cert. denied*, 555 U.S. 993 (2008); *United States v. Edwards*, 2012 WL 3240613, *6 (S.D.N.Y. 2012) ("[u]pon seeing the hammer of the gun, the officers could lawfully conduct a warrantless search of the [vehicle], pursuant to the automobile exception"); *United States v. Fuller*, 2007 WL 3006081, *2 (E.D.N.Y. 2007) ("upon shining the flashlight into the car, [the officer] observed a firearm . . . [;] [a]t this point, [the officer] was entitled to seize the gun that was in plain view[,] . . . [and] the gun in plain view gave the officers probable cause to believe the car contained contraband, thus allowing them to search the car pursuant to the automobile exception to the search warrant requirement"); *United States v. Felipe*, 1996 WL 573606, *1 (S.D.N.Y. 1996) ("[t]he search of the vehicle and its occupants was permissible once [the officer] had seen what appeared to be a gun in the vehicle"); *see also United States v. Venner*, 2016 WL 8730170, *10 (D.V.I. 2016) (observation of firearm magazine provided officer with probable cause to believe vehicle contained "contraband, specifically an unlawfully possessed gun and ammunition[;] [a]ccordingly, the subsequent search of the [vehicle] was permissible under the automobile exception, and the evidence received - *i.e.* the magazine, firearm, ammunition, marijuana and drug paraphernalia - was lawfully discovered").

R&R, pp. 16–17, ECF No. 47.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the R&R to which objections have been made.  In that regard, the Court has now conducted such *de novo* review of the  R&R, including a review of the transcripts  of the evidentiary hearings held on January 27, 2020, and continued on February 18, 2020, ECF Nos. 39 and 40, as well as consideration of the following exhibits received into evidence: #1, # 2, # 3, # 4, and # 5 , which are all photographs; # 6, a video recording from Contreras' body cam; and  # 8, a video recording from Rochester Police Officer Adam Bradstreet's body cam[2]. The Court has also considered Defendant's objections, ECF No. 49.  Upon *de novo review,*

---

[2] Another exhibit, # 7, Rochester Police Department General Order 511, pertaining to "inventory searches" was also introduced at the hearing. However, since Magistrate Judge Payson did not apply this exception to the warrant requirement in recommending that the motion to suppress the cocaine and marijuana be denied, and the Government did not object to the R&R in this regard, it is not relevant to the Court's *de novo* review.

the Court accepts the proposed findings and recommendations of Magistrate Judge Payson.

Specifically, with respect to resolving the factual issue raised by Defendant, that this Court, upon a *de novo* review, should reject Magistrate Judge Payson's finding that Contreras' credible testimony supported the "plain view" seizure of the firearm, the Court finds very analogous the rationale in the following case:

> . . . Judge Feldman conducted an evidentiary hearing where Investigator Deaton and Special Agent Messinger testified as to the circumstances surrounding the statements obtained from Defendant on October 16, 2013, and April 13, 2016, respectively. (*See* Dkt. 69). Judge Feldman credited these witnesses' testimony, and after reviewing the transcripts of the testimony, this Court finds no reason to reject Judge Feldman's credibility determinations. Indeed, the video and audio recordings admitted into evidence at the hearing before Judge Feldman corroborate the witnesses' testimony. In conducting its *de novo* review, the district court must give appropriate deference to the credibility determinations made by the magistrate judge who conducted an evidentiary hearing and observed the witness testimony. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980) (district court is not required to rehear witness testimony when accepting a magistrate judge's credibility findings); *Cullen v. United States*, 194 F.3d 401, 407 (2d Cir. 1999) (holding that "without an evidentiary hearing, the District Court could not reject the Magistrate Judge's proposed credibility finding"); *United States v. Lawson*, 961 F. Supp. 2d 496, 499 (W.D.N.Y. 2013) ("The Second Circuit has instructed that where a Magistrate Judge conducts an evidentiary hearing and makes credibility findings on disputed issues of fact, the district court will ordinarily accept those credibility findings."); *United States v. Preston*, 635 F. Supp. 2d 267, 269 (W.D.N.Y. 2009) ("The district court, however, may not reject the magistrate judge's credibility findings without conducting an evidentiary hearing at which the district court has the opportunity to observe and evaluate witness credibility in the first instance.").

*United States v. Guobadia*, 2019 WL 1593922, at *2–3 (W.D.N.Y. 2019)*; See also United States v. Preston*, 635 Fed. Supp. 2d 267 (W.D.N.Y. 2005). Here, like the *Guobadia* case, the Court accepts the Magistrate Judge's credibility findings.

The Court also agrees with Magistrate Judge Payson as to her application of the automobile exception to justify the search of Defendant's vehicle and the seizure of the cocaine and marijuana. Defendant contends that *United States v. Miller*, 265 F.App'x 5 (2d Cir. 2005), a case on which Magistrate Judge Payson relied on in rendering her R&R, supports his position that the automobile exception does not apply to him, since, having seized the handgun itself (unlike *Miller* which involved a gun magazine only) there was no probable cause to search the truck further. However, the Court disagrees, and reads *Miller* in conjunction with the other cases cited by Magistrate Judge Payson to support the application of the automobile exception in the circumstances present in this case. Here, since the police had probable cause to believe Defendant had committed the crime of Criminal Possession of Weapon in violation of New York State Penal Law for possession of the firearm in the truck, they had probable cause to search the vehicle for further evidence of such crime, e.g. additional ammunition.

Accordingly, for the reasons set forth in Magistrate Judge Payson's R&R, ECF No. 47, Defendant's application to suppress tangible evidence is denied.

IT IS SO ORDERED.


Dated:      Rochester, New York
            September 30, 2020,

            ENTER:

                        /s/ Charles J. Siragusa
                        CHARLES J. SIRAGUSA
                        United States District Judge